**Jeffrey CLARK, Plaintiff,**

v.

**Leroy ZIMMERMAN, District Attorney of Dauphin County, et al., Defendants.**

**Civ. No. 75–443.**

United States District Court,
M. D. Pennsylvania.

May 7, 1975.

SHERIDAN, Chief Judge.

Plaintiff, Jeffrey Clark, who is presently incarcerated at the Dauphin County Prison awaiting trial on state charges of aggravated assault, robbery, and conspiracy to deliver a controlled substance, has filed this civil rights action pursuant to 42 U.S.C.A. § 1983 against Leroy Zimmerman, the District Attorney of Dauphin County, William Woods, a state district magistrate in Harrisburg, and Norvil Ulrich, a Harrisburg police officer. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C.A. §§ 2201, 2202 that the defendants' actions violate his constitutional rights, a preliminary and permanent injunction enjoining his prosecution on the aforementioned state charges, and compensatory and punitive damages against the defendants. Federal jurisdiction is properly predicated on 28 U.S.C.A. § 1343.

Specifically, plaintiff alleges that defendant Ulrich, who arrested plaintiff pursuant to a John Doe warrant, lacked probable cause to make the arrest and hence his subsequent detention and interrogation at the police department violated his constitutional rights. Plaintiff further contends that the actions of magistrate Woods and district attorney Zimmerman at the preliminary hearing violate his constitutional rights because the magistrate arbitrarily and unfairly decided, due to the undue influence of the district attorney, that defendant be held for grand jury action on false criminal charges and set excessive bail to prevent his pre-trial release, all without a proper evidentiary showing by the district attorney. In essence plaintiff avers that all three defendants have conspired to detain and try him for crimes he did not commit and have acted in furtherance of this end in a manner which violates his constitutional rights

In Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and its companion cases, Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701, the Supreme Court held that a federal court may not interfere in the ongoing state criminal process absent a showing of prosecutorial bad faith or harassment, or other "extraordinary circumstances." The Court based its decision on the interwoven concepts of equitable restraint, federalism, and comity. O'Shea v. Littleton, 1974, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674; Bykofsky v. Borough of Middletown, M.D.Pa., 389 F.Supp. 836 (decided February 18, 1975). The *Younger* doctrine prohibits the injunctive relief and Samuels v. Mackell, supra, the declaratory judgment, which plaintiff seeks with respect to his prosecution on the criminal charges. Kugler v. Helfant, 1975, —— U.S. ——, 95 S.Ct. 1524, 44 L.Ed.2d 15.

To the extent plaintiff is challenging his present pre-trial *custody*, on the ground that the bail is excessive or on any other ground, the court should not adjudicate the merits of these claims because plaintiff has failed to exhaust state remedies. State prisoners must exhaust state remedies before seeking federal habeas corpus relief by affording the state courts, including the state appellate courts, the opportunity to rule on their contentions. 28 U.S.C.A. § 2254; Preiser v. Rodriguez, 1973, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439; Braden v. 30th Judicial Circuit Court of Kentucky, 1973, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443; Geisler v. Walters, 3 Cir., 510 F.2d 887 (filed February 5, 1975); Grant v. Hogan, 3 Cir. 1974, 505 F.2d 1220. While the exhaustion doctrine does not require that the state courts have actually ruled on the merits of the claims, it does require that they have had the federal habeas petitioner's contentions presented to them. Geisler v. Walters, supra; Grant v. Hogan, supra. When a state prisoner challenges the fact or duration of his imprisonment

and seeks a determination that he is entitled to immediate release or a speedier release from that imprisonment, his *sole* federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. at 500, 93 S.Ct. 1827. In short, a state prisoner cannot use the Civil Rights Act to circumvent the federal habeas corpus exhaustion requirement. Preiser v. Rodriguez, supra; *see* Moore v. DeYoung, 3 Cir., 515 F.2d 437 (filed April 8, 1975).

28 U.S.C.A. § 2254(b), (c) states:

"(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"(c) An applicant shall not be deemed ·to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

28 U.S.C.A. § 2243 provides in pertinent part:

"A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, *unless it appears from the application that the applicant or person detained is not entitled thereto.*" (Emphasis supplied.)

Under the above provisions a district court has the power to dismiss *sua sponte* a state prisoner's habeas corpus petition when it is clear that state remedies have not been exhausted. Allen v. Perini, 6 Cir. 1970, 424 F.2d 134, cert. denied, 1970, 400 U.S. 906, 91 S.Ct. 147,

27 L.Ed.2d 143. As stated by the court in Allen v. Perini, 424 F.2d at 141:

"Under this provision [28 U.S.C.A. § 2243] the District Court has a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face. No return is necessary when the petition is frivolous, or obviously lacking in merit, or where, as here, the necessary facts can be determined from the petition itself without need for consideration of a return. Higgins v. Steele, 195 F.2d 366 (8th' Cir.); Farley v. Skeen, 113 F.Supp. 736 (D.C.W.Va.), appeal dismissed, 208 F.2d 791 (4th Cir.). Such procedure is most peculiarly applicable where, as here, the District Court can take judicial notice that the responding office of the State Attorney General is understaffed and overloaded with work."

Thus, to the extent plaintiff seeks release from custody and challenges the amount of bail set as excessive, these claims will be dismissed for failure to exhaust state remedies.

■ There remains the issue of whether plaintiff presently can litigate his damage claims. While the general rule in civil rights actions is that exhaustion of state remedies is not a prerequisite to their prosecution, there are exceptions to this·rule. For example, in McCray v. Burrell, D.Md.1973, 367 F.Supp. 1191, the court held that prior to bringing a civil rights suit for injunctive relief or monetary damages, a state prisoner must exhaust any *adequate* state *administrative* remedy. *Accord*: Washington v. Boslow, D.Md.1974, 375 F.Supp. 1298; Marnin v. Pinto, 3 Cir. 1972, 463 F.2d 583; *cf.* Becker v. Oswald, M.D.Pa.1973, 360 F.Supp. 1131; Whitner v. Davis, 9 Cir. 1969, 410 F.2d 24; Toney v. Reagan, 9 Cir. 1972, 467 F.2d 953; Stevenson v. Board of Education of Wheeler County, Georgia, 5 Cir. 1970, 426 F.2d 1154; *But see* Palmigiano v. Mullen, 1 Cir. 1974, 491 F.2d 978 (a prisoner need not exhaust state *judicial* remedies in order to prosecute a civil rights

action under 42 U.S.C.A. § 1983); Jones v. Superintendent, W.D.Va.1974, 370 F.Supp. 488. *See also* Recent Developments, "State Inmates' Challenge To Conditions Of Prison Confinement Is Cognizable Under 42 U.S.C.A. § 1983 And Entails No Requirement Of Exhaustion Of State Remedies," 72 Col.L. Rev. 1078 (1972).

■■ In Preiser v. Rodriguez, 1973, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, the Supreme Court established an exception to the general rule that exhaustion is not required in civil rights actions. In *Preiser* the Court held that where suits for equitable relief under 42 U.S.C.A. § 1983 come within the "core of habeas corpus," i. e., constitute a challenge to the fact or duration of plaintiff's confinement, 411 U.S. at 489, 93 S.Ct. 1827, the exhaustion requirement of habeas corpus could not be circumvented. The Court reasoned that it would undermine the integrity of the writ of habeas corpus if a prisoner could evade the habeas exhaustion requirement by the simple expedient of seeking the same relief in a civil rights action. The *Preiser* Court based its holding also on the notion of federalism or comity which requires that federal courts avoid unnecessary friction with and interference in the state criminal justice system. This concern for comity is in accordance with the holding in Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669, that among the state functions of which a federal court must be particularly respectful is the administration of state criminal justice. *Accord*: Kugler v. Helfant, 1975, —— U.S. ——, 95 S.Ct. 1524, 44 L.Ed.2d 15; O'Shea v. Littleton, 1974, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674; Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138; Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L. Ed. 1324; Watson v. Buck, 1941, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Fenner v. Boykin, 1926, 271 U.S. 240, 46 S. Ct. 492, 70 L.Ed. 927; Railroad Commission v. Pullman, 1941, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971.

Thus, the issue squarely before the court is whether there are restrictions on actions for money damages under 42 U.S.C.A. § 1983 which arise out of the concept of comity and out of the need for maintenance of the integrity of the writ of habeas corpus. In a recent case, Guerro v. Mulhearn, 1 Cir. 1974, 498 F.2d 1249, the Court of Appeals for the First Circuit held that it was proper to dismiss a civil rights action for damages which is brought during pendency of a state appeal of a criminal conviction, when the civil rights action would require the court to rule upon the validity of the state criminal conviction. The court reasoned as follows:

"Despite the difference in the form of relief being sought, a suit for money damages under section 1983 may also have a substantially disruptive effect upon contemporary state criminal proceedings, and may also undermine the integrity of the writ of habeas corpus. Where the federal court, in dealing with the question of damages caused by violation of civil rights, would have to make rulings by virtue of which the validity of a conviction in contemporary state proceedings would be called in question, the potential for federal-state friction is obvious. The federal ruling would embarrass, and could even intrude into, the state proceedings. Questions concerning the effect to be given the federal ruling in the state courts might be difficult ones, and could lead to delay, or even derailment of the course of the state action. It is not impossible that circumstances might arise where a federal judgment for damages could be used by a state defendant to obtain his release from, or prevent, his incarceration, thus presuming upon, if not preempting, the province of the Great Writ. Other disruptive consequences can be envisioned as, for example, use of a 1983 suit to cir-

cumvent state discovery limitations, or to harass witnesses. *See* Dellinger v. Mitchell, 143 U.S.App.D.C. 60, 442 F.2d 782, 785 (1971).

"It is nonetheless unfortunate that a civil rights litigant might be forced to await the conclusion of state criminal proceedings against him before he may attempt to vindicate his federal rights in a federal forum. But while any delay of this type is costly, the fact of the matter is that federal relief in the form of immediate or more speedy release from incarceration, normally a matter of even more pressing concern, is subject to just this sort of delay. . . . In any event, whatever cost to the litigant may be involved, there is an overriding cost that is avoided. Damage to the smooth operation of the administration of criminal justice, injury to the proper workings of a federal system, and undermining of congressional concern with the functioning of the writ of habeas corpus—all are harms which are prevented by the requirement that a civil rights damage action be deferred.

"The touchstone for any decision to defer a civil rights damage action which is parallel to state criminal proceedings is whether the federal court will be making rulings whose necessary implication would be to call in question the validity of the state conviction. . . . As in any area of the law, marginal cases will arise, calling for the exercise of a delicate judgment. The first question will be whether or not the validity of a state criminal conviction which has not yet completed the full course of both trial and appeal will be a necessary issue in the federal action. If so, the federal action must be either dismissed or held in abeyance until the state proceedings are completed. If the answer to this first question is unclear, then the federal court may properly weigh the potential harm to comity and the orderly administration of criminal justice against the potential harm to the litigant, in reaching its decision." (Footnotes omitted.)

 For the reasons set forth in *Guerro,* this court holds that it would be an improper interference with the state criminal process for a federal court to adjudicate constitutional issues which are relevant to the disposition of pending state criminal charges in a civil rights suit for money damages. *See* Gaito v. Ellenbogen, 3 Cir. 1970, 425 F. 2d 845, 848–849; Still v. Nichols, 1 Cir. 1969, 412 F.2d 778; Moore v. Frazier, D.Neb.1970, 316 F.Supp. 318; Smith v. Logan, W.D.Va.1970, 311 F.Supp. 898; Greene v. State of New York, S.D.N.Y. 1967, 281 F.Supp. 579; Rodgers v. Westbrook, E.D.Mo.1973, 362 F.Supp. 353; Martin v. Roach, S.D.N.Y.1968, 280 F. Supp. 480; Phipps v. McGinnis, S.D. N.Y.1970, 327 F.Supp. 1.

 Since the federal equity power must refrain from staying state prosecutions outright, the federal courts must also refrain from adjudicating, in the context of damage suits, constitutional issues which are inherently involved in such prosecutions. A federal adjudication of such constitutional issues obviously would intrude into the state criminal process. Federal adjudication of damage claims would raise uncertainty in the state criminal proceedings as to the effect to be given there to a federal ruling on constitutional questions. Indeed, under the doctrine of collateral estoppel, it might well be that the federal ruling would be binding on the state criminal proceeding. *Cf.* Kauffman v. Moss, 3 Cir. 1970, 420 F.2d 1270; Basista v. Weir, 3 Cir. 1965, 340 F.2d 74; Gaito v. Strauss, W.D.Pa.1966, 249 F. Supp. 923, 933–934, aff'd, 3 Cir. 1966, 368 F.2d 787; Roode v. Michaelian, S.D. N.Y.1974, 373 F.Supp. 53. This kind of interference with the state criminal process is impermissible.

 As the Supreme Court recently stated in Braden v. 30th Judicial Circuit Court of Kentucky, 1973, 410 U. S. 484, 493, 93 S.Ct. 1123, 1129, 35 L. Ed.2d 443, "We emphasize that nothing

we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court." In a recent case, Moore v. DeYoung, 3 Cir., 515 F.2d 437 (filed April 8, 1975), the Court of Appeals for the Third Circuit held that a federal court may not interfere in an ongoing state criminal prosecution in the *pre-trial habeas corpus* context absent a showing of prosecutorial bad faith or harassment, or other "extraordinary circumstances," which call for the interposition of a court of equity to prevent great, immediate, and irreparable injury which is clear and imminent and for which there is no adequate remedy at law, and that denial of the constitutional right to a speedy trial[1] alone does not justify or permit such pre-trial intervention in the state criminal process. The court based its holding in part on the need to avoid "pre-trial federal intervention in the orderly functioning of state criminal processes." As the court in *Moore* stated:

> "Although the doctrines of 'habeas corpus-exhaustion' and 'Younger-abstention' are not directly related, they share many characteristics in common. They are both predicated upon interests of federalism and comity; they both recognize exceptions for 'extraordinary circumstances'; both doctrines are doctrines of judicial restraint; they both envisage adequate state remedies; *and, they both bar petitioners who seek to abort state prosecutions, prior to trial or final state review.*" (Emphasis supplied.)

The propriety of arrests, the admissibility of evidence, and federal constitutional claims in state criminal prosecutions are ordinarily matters to be resolved initially by state courts, subject, of course, to review by certiorari or, in proper cases, on federal habeas corpus or federal civil rights actions. Perez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701.

To allow state criminal defendants to litigate their constitutional claims in civil rights suits for money damages before completion of the state criminal process would invite a flanking movement against the system of state courts by resort to the federal courts to litigate constitutional defenses in civil rights damage actions, thereby subverting the orderly functioning of the state criminal process. *Cf.* Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138. Such suits would introduce an element of uncertainty in state criminal proceedings and would expose every state criminal justice system to insupportable disruption. *Cf.* O'Shea v. Littleton, 1974, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674; Bykofsky v. Borough of Middletown, M.D.Pa., 389 F.Supp. 836 (decided February 18, 1975). In short, the basic policy against federal interference with pending state prosecutions would be frustrated as much by civil rights damage actions as by equitable or declaratory relief. *Cf.* Kugler v. Helfant, 1975, —— U.S. ——, 95 S.Ct. 1524, 44 L.Ed.2d 15.

■ To summarize, the court holds that the principle of comity and the need to maintain the integrity of the writ of habeas corpus require that civil rights damage suits cannot be used to adjudicate the merits of constitutional issues involved in pending state criminal proceedings prior to a judgment of acquittal or conviction and exhaustion of state remedies.

■ From the foregoing analysis, it is apparent that the complaint must be dismissed. The thrust of plaintiff's complaint is that he has been arbitrarily arrested, incarcerated, and held for trial on false charges by the individual and concerted acts of the defendants in a manner that violates his constitutional

1. Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101; Smith v. Hooey, 1969, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed. 2d 607; Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1.

rights, and therefore the state criminal charges should be dismissed and any further prosecution enjoined. The adjudication of plaintiff's constitutional claims in a civil rights damage suit would require the court to rule upon issues relevant to the disposition of the state criminal charges thereby intruding impermissibly in the state criminal process. *Cf.* Kugler v. Helfant, 1975, —— U.S. ——, 95 S.Ct. 1524, 44 L.Ed.2d 15.

It should be noted that there is an additional reason for dismissing the damage claims against district attorney Zimmerman and magistrate Woods—to wit, the doctrines of prosecutorial and judicial immunity.

■ The doctrine of judicial immunity protects judges from liability for damages in civil rights suits for acts committed within their judicial jurisdiction. Pierson v. Ray, 1967, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288; Bradley v. Fisher, 1871, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646; Bauers v. Heisel, 3 Cir. 1966, 361 F.2d 581. As stated by the Supreme Court in Pierson v. Ray, 386 U.S. at 554, 87 S.Ct. at 1218, "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'"

■ A prosecuting attorney is afforded the same immunity as is afforded judges. Bauers v. Heisel, 3 Cir. 1966, 361 F.2d 581, 589–591; Kauffman v. Moss, 3 Cir. 1970, 420 F.2d 1270. A prosecuting attorney is afforded this immunity because his primary responsibility is essentially judicial—the prosecution of the guilty and the protection of the innocent—and because his office is vested with a vast quantum of discretion which is necessary for the vindication of the public interest, it being imperative that he enjoy the same freedom and independence of action as

judges in performing his duties. Bauers v. Heisel, 3 Cir. 1966, 361 F.2d at 589–590.

■■ Therefore, both magistrates and district attorneys are immune from liability for damages under the Civil Rights Act unless their alleged actions are clearly outside the *scope* of their respective jurisdictions. The only exception to judicial and prosecutorial immunity are acts of a judge or prosecuting attorney which are clearly *outside* his *jurisdiction*, as distinguished from acts which are merely in *excess* of his jurisdiction, the latter not being actionable. Pierson v. Ray, supra; Bradley v. Fisher, supra; Bauers v. Heisel, supra; Kauffman v. Moss, supra; Classic Distributors, Inc. v. Zimmerman, M.D.Pa.1974, 387 F.Supp. 829. This distinction with respect to immunity was established by the Supreme Court in Bradley v. Fisher, supra, wherein the Court stated:

"In the present case we have looked into the authorities and are clear, from them, as well as from the principle on which any exemption is maintained, that the qualifying words used were not necessary to a correct statement of the law, *and that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter.* Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other

questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. *Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offenses being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction,* or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. . . ." 80 U.S. (13 Wall.) at 351–352. (Emphasis supplied.)

Since prosecuting attorneys are afforded the same immunity as judges, the exception to prosecutorial immunity would be acts undertaken which are clearly beyond the scope of the jurisdiction of the prosecutor's office, e. g., a state district attorney purporting to prosecute a citizen for a federal offense.

■ Accepting as true all the allegations of the complaint *sub judice*, it is clear that magistrate Woods and district attorney Zimmerman are immune as a matter of law from liability for damages. Although it is alleged that they acted improperly and in excess of their jurisdiction, it is apparent that they both were acting within the scope of their jurisdiction under the facts alleged in the complaint.

■ A police officer is not immune from liability for damages under the Civil Rights Act, although he has available the affirmative defense of good faith, that is, the defense that even if his acts did violate plaintiff's constitutional rights, the officer reasonably believed in good faith that said acts were constitutional.[2] Pierson v. Ray, 386 U.S. at 555–557, 87 S.Ct. 1213; Fisher v. Volz, 3 Cir. 1974, 496 F.2d 333, 348 & n. 27; Rodriguez v. Jones, 5 Cir. 1973, 473 F.2d 599; Bivens v. Six Unknown Named Agents, 2 Cir. 1972, 456 F.2d 1339. Therefore, since officer Ulrich is not immune and good faith is an affirmative defense, the dismissal of the damage claims against him is predicated *solely* on the court's previous holding that a civil rights suit for dam-

2. Good faith is an affirmative defense for police officers charged in a civil rights action under 42 U.S.C.A. § 1983 with the violation of plaintiff's constitutional rights. If plaintiff proves that police officer made an arrest without probable cause, conducted a search violative of the fourth amendment, or otherwise violated his constitutional rights, the officer still is not liable for damages if he proves good faith and reasonable belief in the validity of the arrest, search, or other unconstitutional act. To prevail in this defense, the police officer need not allege nor prove probable cause to arrest or search in the constitutional sense or that any other act was constitutional. Rather the officer must prove: (1) that he believed, in good faith, that his conduct was lawful (subjective standard) and (2) that his belief was reasonable (objective standard). Thus if a factfinder decides that a police officer *reasonably believed in good faith* that his conduct was constitutional, the factfinder must decide in favor of the officer, even though his conduct in fact was violative of plaintiff's constitutional rights. As a matter of constitutional law and common sense, a law enforcement officer is entitled to this defense and this protection. Pierson v. Ray, 1967, 386 U.S. 547, 555–557, 87 S.Ct. 1213, 18 L.Ed.2d 288; Fisher v. Volz, 3 Cir. 1974, 496 F.2d 333, 348 & n. 27; Rodriguez v. Jones, 5 Cir. 1973, 473 F.2d 599, 604–605; Bivens v. Six Unknown Named Agents, 2 Cir. 1972, 456 F.2d 1339, 1347–1348.

ages cannot be used to adjudicate the merits of constitutional issues and defenses relevant to the disposition of pending state criminal charges prior to a judgment of acquittal or conviction and exhaustion of state remedies.

■ Under 28 U.S.C.A. § 1915(d), which is part of a section titled "Proceedings in Forma Pauperis," a federal court is authorized by Congress to dismiss an in forma pauperis action "if satisfied that the action is frivolous or malicious." Congress recognized that the courts need an extra measure of authority and discretion when dealing with actions proceeding in forma pauperis. The public policy embodied in 28 U.S.C.A. § 1915 is that, while persons who are unable to pay costs or give security therefor should be allowed to prosecute or defend actions for the protection of their rights without being required to pay costs or give security, they should not be allowed under the cover of the statute to abuse the process of the court by prosecuting suits which are either frivolous or malicious. Fletcher v. Young, 4 Cir. 1955, 222 F.2d 222, 224; Pennebaker v. Chamber, 3 Cir. 1971, 437 F.2d 66; Isenberg v. Prasse, 3 Cir. 1970, 433 F.2d 449; Jones v. Bales, N.D.Ga.1972, 58 F.R.D. 453, 463–464 & n. 2, aff'd, 5 Cir. 1973, 480 F.2d 805; Williams v. Field, 9 Cir. 1968, 394 F.2d 329.

Congress having authorized prosecution of actions in forma pauperis pursuant to 28 U.S.C.A. § 1915(a), it provided at the same time in Section 1915 (d) broader dismissal powers with respect to such suits than in other cases in order to prevent an abuse of the Section 1915(a) privilege, by empowering the courts to dismiss *sua sponte* without issuance of process frivolous or malicious suits. As stated by the court in Jones v. Bales, 58 F.R.D. at 463–464:

"Since dismissal is predicated not on Rule 12 but 28 U.S.C. § 1915(d), some general discussion of section 1915 is appropriate before reviewing the reasons why dismissal in this case is warranted. Section 1915 provides the statutory basis for in forma pauperis proceedings in federal courts. . . . Subsection (d) is a grant of power to dismiss in situations where dismissal under Federal Rule of Civil Procedure 12 might be improper. *See* Cruz v. Beto, 405 U.S. 319, 328, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1971) (Rehnquist, J. dissenting); Boag v. Boies, 455 F. 2d 467 (9th Cir. 1972); Conway v. Oliver, 429 F.2d 1307 (9th Cir. 1970); Allison v. Wilson, 434 F.2d 646 (9th Cir. 1970); Allison v. California Adult Authority, 419 F.2d 822 (9th Cir. 1969); Diamond v. Pitchess, 411 F.2d 565 (9th Cir. 1969); Urbano v. Sondern, 370 F.2d 13 (2d Cir. 1966), aff'g 41 R.F.D. 355 (D.Conn.1966); Fletcher v. Young, 222 F.2d 222, 224 (4th Cir. 1955).

"There are compelling reasons for allowing courts broader dismissal powers in forma pauperis suits—especially damage suits brought by convicted prisoners—than in other cases. *Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for 'malicious prosecution' or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain.* The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong. As Justice Rehnquist has noted, 'Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse.' Cruz v. Beto, 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L. Ed.2d 263 (1972) (dissenting).

"*The Federal Rules of Civil Procedure are inadequate to protect the*

courts and defendants—*who it should be remembered pay for their defense —from frivolous litigation from indigent prisoners.* The Rules are liberal; they are designed so that most cases will actually go to trial if the parties so desire. Under current standards, Rule 12 motions to dismiss are rarely properly granted. *See* Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Campbell v. Beto, 460 F.2d 765 (5th Cir. 1972). *The liberal approach of the Rules is probably desirable, but the rules contemplate litigants who are limited by the realities of time and expense. They also contemplate litigants with a basic respect for accuracy.* As Judge Duniway has written '[w]e know from sad experience with habeas corpus and 2255 cases that imprisoned felons are seldom, if ever, deterred by the penalties of perjury. They do not hesitate to allege whatever they think is required in order to get themselves even the temporary relief of a proceeding in court.' Weller v. Dickson, 314 F.2d 598, 602 (9th Cir. 1963) (concurring opinion). A reasonably intelligent prisoner with a willingness to misrepresent facts can often avoid both 12b dismissal and summary judgment, although he actually has no chance of eventual success in his suit. Even if summary judgment can be won by a defendant, much expense may already have been suffered by him in retaining counsel to conduct the defense.

". . . *In light of 1915(d)'s general purpose, the specific term 'frivolous' refers to an action in which the plaintiff's realistic chances of ultimate success are slight. See e. g.,* Urbano v. Sondern, 370 F.2d 13 (2d Cir. 1966), aff'g 41 F.R.D. 355 (D. Conn.1966); Weller v. Dickson, 314 F.2d 598 (9th Cir. 1963) (Duniway, J., concurring). This is not to say that such suits should not be allowed filed or be dismissed abruptly or that a court should readily assume frivolity because it is prisoner filed. To the contrary, it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same. In the former instance, the case should proceed with the assistance of the court. However, upon reasonable effort where the contrary appears, it should be dismissed. . . ." (Footnote omitted.) (Emphasis supplied.)

 "Frivolous" in Section 1915 (d) refers to an action in which the plaintiff's realistic chances of success are slight. Jones v. Bales, supra; Williams v. Field, supra. In the instant case, in view of the doctrine of judicial and prosecutorial immunity, the principle that constitutional issues relevant to the disposition of pending state criminal charges cannot be adjudicated in a federal civil rights damage action, and the *Younger* doctrine of federal nonintrusion in the state criminal process, petitioner's complaint is frivolous as a matter of law, since be presently has *no* chance of succeeding on the merits in light of these legal principles. Guerro v. Mulhearn, 1 Cir. 1974, 498 F.2d 1249; Moore v. Frazier, D.Neb.1970, 316 F. Supp. 318; Greene v. State of New York, S.D.N.Y.1967, 281 F.Supp. 579; *see* Pennebaker v. Chamber, 3 Cir. 1971, 437 F.2d 66; Isenberg v. Prasse, 3 Cir. 1970, 433 F.2d 449; Wagner v. Holmes, E.D. Ky.1973, 361 F.Supp. 895; Jones v. Bales, supra; Williams v. Field, supra. In short, plaintiff's complaint is *legally* frivolous, i. e., frivolous as a matter of law. *See* Pennebaker v. Chamber, 3 Cir. 1971, 437 F.2d at 67; Isenberg v. Prasse, 3 Cir. 1970, 433 F.2d 449.

Therefore, the complaint will be dismissed as frivolous, pursuant to 28 U.S. C.A. § 1915(d), without issuance of process.