William J. MURPHY

v.

Charles FENTON, Warden, U. S. P., Lewisburg, Pa., et al.

William J. MURPHY

v.

Charles E. FENTON, Warden.

Civ. Nos. 78–245, 78–260 and 78–524.

United States District Court, M. D. Pennsylvania.

Sept. 28, 1978.

As Amended March 7, 1979.

William J. Murphy, pro se.

Joseph F. Cimini, Asst. U. S. Atty., Scranton, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff Murphy filed the three above-captioned actions while confined in the administrative segregation unit at the United States Penitentiary at Lewisburg, Pa. All three actions challenge his placement and confinement in that unit. Plaintiff was placed in the unit against his will for his own protection. He seeks: (1) a court order mandating that he be released from the administrative segregation unit and be returned to the general population at Lewisburg; plus (2) monetary damages and the award of the extra good time which he would have earned had he not lost his prison job. The job was lost due to his placement in the segregation unit. On August 11, 1978, this court granted respondent Fenton's motion in Civil No. 78–260 to allow for the transfer of Mr. Murphy to another federal institution outside the Middle District of Pennsylvania for the purpose of placing

him in the general population at the new institution. *See* Civil No. 78–260, document No. 44, filed August 11, 1978. Plaintiff was in fact transferred on September 5, 1978. *See* Civil No. 78–260, document No. 52, filed Sept. 8, 1978. Therefore, since the transfer was and is lawful and since plaintiff is no longer confined in the administrative segregation unit at Lewisburg, only the request for damages remains.

■ All three of these actions are properly brought pursuant to 28 U.S.C. § 1331 with a request for injunctive relief and damages and will be construed as such.[1] (As stated, the claim for injunctive relief is no longer before the court.) Furthermore, since all three actions concern common questions of law and fact, they will be consolidated. *See* Fed.R.Civ.P. 42(a). Presently before the court is a motion filed by defendants in Civil No. 78–245 to dismiss or, in the alternative, for summary judgment. I will treat this motion as one for summary judgment and will consider all the documents filed in all three actions, particularly the affidavits filed in Civil No. 78–260. Defendants will be granted judgment on the substantive due process claim (i. e., they have not acted arbitrarily or capriciously). Plaintiff, the nonmoving party, *see* 10 Wright & Miller, Federal Practice and Procedure, § 2720 (1975), will be granted judgment on his claim regarding the lawfulness of the procedures employed by defendants in determining that he should be placed in administrative segregation. However, although I believe that judgment for plaintiff on the latter claim is appropriate, I also believe that in the situation presented here, *see infra*, the defendants, as a matter of law, given their qualified immunity, i. e., the good faith defense, cannot be held liable in damages to plaintiff. Furthermore, given that, plus the fact that plaintiff has no constitutional right to a particular prison job, *see Beatham v. Manson*, 369 F.Supp. 783 (D.Conn.1973), and the fact that his job was not taken away arbitrarily or capriciously, it would also not be appropriate for this court to order that plaintiff be granted the extra good time he would have earned had he been able to keep his prison job. Judgment will be granted for defendants and the action will be dismissed. Lastly, it will be ordered that any memorandums or orders issued previously in any of the three actions which are inconsistent with this memorandum and order are vacated.[2]

### THE FACTS

On or about March 1, 1978, plaintiff was removed from the general population at Lewisburg and placed in the administrative segregation unit, where he was confined until his transfer on September 5, 1978. Placement in the unit resulted in plaintiff being subjected to the deprivations associat-

1. Both Civil Nos. 78–245 and 78–524 were brought pursuant to, inter alia, 28 U.S.C. § 1331. However, Civil No. 78–260 was brought pursuant to 28 U.S.C. § 2241. Arguably, since plaintiff is seeking, among other things, good time credits, the action is properly brought as a habeas action. However, plaintiff is not seeking the restoration of good time to which he would be entitled by statute had it not been lost. Rather, the request for the good time is really an element of the claim for damages. Also, the request for the good time credits is a minor part of the action (and good time credits are most meaningful only if an inmate in plaintiff's position is not paroled) and by construing all the actions as brought pursuant to 28 U.S.C. § 1331, I believe plaintiff's claims can be handled more expeditiously. Furthermore, the distinction between whether an action is a civil rights or habeas corpus action has far more import when the prisoner is a state inmate. State inmates need not exhaust reme-

dies before bringing an action pursuant to 42 U.S.C. § 1983, but must exhaust before bringing a habeas action. Federal inmates must generally exhaust administrative remedies regardless of the type of action. I will not dismiss here for a failure to exhaust even though plaintiff may not have finished exhausting his administrative remedies at the time the action was filed. He had fully exhausted as of May 9, 1978. *See* Civil No. 78–260, document No. 25, filed May 18, 1978.

2. Also before the court is a motion filed by defendants in Civil No. 78–524 to dismiss without prejudice because of the pendency of the other two actions, and a motion filed by plaintiff in Civil No. 78–260 to be allowed sufficient time to make any future replies. Both of these motions are obviously no longer relevant and will not be ruled on by the court.

ed with administrative segregation and, as stated, in his being unable to continue with his prison job, thereby losing the wages and extra good time he earned at that job. The prison authorities allege that plaintiff was placed in administrative segregation because it was and is believed that if he were in the general population at Lewisburg his life would be in danger. Originally, the main alleged basis for this belief was that Unit Manager James Jacobsen[3] had received information from a reliable source (an unidentified informant), that plaintiff had been labeled an informant by individuals in the inmate population, and that he was in physical danger. *See* affidavits of James Jacobsen, document No. 18, filed June 19, 1978, in Civil No. 78–245, and document No. 23, filed May 3, 1978, in Civil No. 78–260. On July 11, 1978, I ruled that there must be a sufficient basis on the record to support the finding by prison officials that the unidentified informant was reliable and that plaintiff was in need of protective custody in order for this court to allow his continued presence in administrative segregation. Such sufficient basis was not on the record and it was ordered that respondent in Civil No. 78–260 expand the record. This order was complied with by respondent submitting another affidavit from Mr. Jacobsen on July 18, 1978. This affidavit outlined a series of incidents involving Mr. Murphy at Lewisburg which allegedly convinced the prison authorities that plaintiff may in fact be in danger in general population and that the informant's tip was reliable. These incidents were, inter alia, that (1) there had been a burnout attempt in plaintiff's cell; and (2) by coincidence, while plaintiff was housed in different living quarters of the prison, a procedural change was instituted in those quarters which some inmates considered detrimental. After each change plaintiff was transferred to new living quarters. These coincidences made it appear that some person or persons could reasonably believe that plaintiff was an informer.

Mr. Jacobsen's July 18, 1978 affidavit also stated that plaintiff twice thwarted efforts by the prison staff to transfer him to general population at another federal penitentiary. This was apparently accomplished by plaintiff's writing letters to the wardens at the other institutions stating that he would refuse to enter the general population if transferred there. Plaintiff does not controvert this. However, he did express a concern that if he were transferred he would then be branded as an informer and his life would really be in danger.

On August 11, 1978, the court again ordered that respondent in Civil No. 78–260 expand the record and detail to the court the exact procedures that were utilized in determining that plaintiff's life was in danger and that he should be placed in administrative segregation. This order was complied with by respondent submitting another affidavit from Mr. Jacobsen. According to this affidavit, plaintiff, at the time of his placement into administrative segregation, was advised in writing that he was being placed there because ". . . the staff feels your life may be in danger. . . ." He did not receive a hearing before his placement in segregation, but was given a formal review hearing on March 8, 1978 by the Institutional Disciplinary Committee (I.D.C.) consisting of Messrs. Cassella, Sinsheimer and Murray. At this hearing plaintiff was orally advised of the nature of the information upon which the decision to place him in detention was based, but not of the confidential source; i. e., he was told of the unidentified informant, He was given another formal review hearing in front of the I.D.C. on April 5, 1978. Thereafter, approximately every thirty (30) days he was given a formal review hearing in front of members of his unit team, twice including Mr. Jacobsen. At these formal review hearings plaintiff was brought before the committee, told again why he was in administrative segregation and permitted to make a statement. He was not afforded a staff representative and was not permitted to call witnesses. He was orally advised of

---

**3.** It appears that Mr. Jacobsen was primarily responsible for the initial decision to place plaintiff in administrative segregation for his own protection.

the committee's decision and the nature of the evidence supporting that decision. Also, a record review was conducted every seven days, generally by the correction supervisor of the special housing unit, but plaintiff had no input into that review. Lastly, there was no 'formal investigation, but Mr. Jacobsen conducted an investigation in the sense that he spoke to plaintiff regarding the burnout in his cell, conferred with other staff members, and obtained the information from the confidential informant.

Plaintiff does not directly dispute that he was placed in administrative segregation because it was believed that his life was in danger. Rather, he does not believe that, in fact, his life was in any danger. He claims that the unidentified informant must have been lying or misinformed. While not disputing the facts outlined in the affidavit of Mr. Jacobsen submitted July 18th, plaintiff asserts that it is incorrect to draw from these facts the conclusion that his life was in danger. He states that (1) it is a common practice in the federal penitentiary system for certain inmates to attempt to scare another inmate by starting a fire in his cell in order to get him to "move on" so that they might have his cell or his job; (2) whenever he was transferred from one section to another, he had requested the transfer far in advance or it was the result of other circumstances having nothing to do with any changes in prison procedures and his transfers did not reflect on his character in the other inmates' minds; and (3) Mr. Jacobsen is basically, in effect, solely responsible for plaintiff's placement in administrative segregation.

As stated, plaintiff maintains that his placement and confinement in the administrative segregation unit was unlawful. He claims that the prison officials never made a proper determination that he was in need of protective custody, never conducted a proper investigation, and that he was not in need of protective custody. Reading this

pro se complaint with the appropriate liberality, *see* Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), I believe that plaintiff is asserting that he has been denied his right to procedural due process and that he had a right to some of the procedures the federal prison officials employ with disciplinary action cases. I also construe his complaint as alleging that he has been denied his constitutional right to substantive due process, i. e., that he was placed in administrative segregation arbitrarily or capriciously. However, plaintiff does not allege that his confinement in administrative segregation amounted to cruel and unusual punishment. His concern has been with the fact of his confinement in the segregation unit, not with the conditions therein.

## DISCUSSION

■ A federal court must exercise care in interfering with the broad discretion afforded prison officials, especially when it comes to the classification of prisoners. *See* Newman v. Alabama, 559 F.2d 283 (5th Cir. 1977). Furthermore, prison officials have a duty to protect inmates from physical assault and danger. *See* 18 U.S.C. § 4042. And, under the proper circumstances, an inmate may be placed in administrative segregation against his will for his own protection. *Cf. Kelly v. Brewer*, 525 F.2d 394, 398 (8th Cir. 1975). However, given the conditions that exist in the administrative segregation unit at Lewisburg, *see* Bureau of Prisons' Policy Statement.No. 7400.5D (July 7, 1975) (hereinafter 7400.5D); and Civil No. 78–260, document No. 34, filed July 18, 1978,[4] I believe that prolonged incarceration in that unit against an inmate's will implicates a liberty interest protected by procedural due process.

■ The procedures employed here appear to basically conform to the procedures outlined in 7400.5D for administrative seg-

---

**4.** These conditions include, inter alia, that an inmate in administrative segregation is only permitted out of his cell for approximately two (2) hours a week (for exercise and showers) and that an inmate there is denied use of most of the facilities available to inmates in general population.

regation cases.[5] In the ordinary administrative segregation case these procedures might well be adequate. In the typical case the underlying facts are not in dispute. For instance, a prisoner may be there for his own protection at his request, *see Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854 (4th Cir. en banc, 1975), or he is there as a holdover, *see Hooker v. Arnold,* 454 F.Supp. 527 (M.D.Pa., 1978) or he may be there pending a hearing for a violation of disciplinary rules or pending an investigation. But in the situation presented here, plaintiff is disputing the facts (his need for protection) which underlay the decision to confine him in administrative segregation. Given this, plus the duration of the confinement,[6] I believe that the procedures utilized were constitutionally deficient. First, I believe that plaintiff was entitled to the procedures outlined in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). That would include, inter alia, the right to call witnesses and present evidence unless institutional safety would have been jeopardized and the right to a written statement after the hearing of the evidence and reasons relied upon. This was not done.[7] Furthermore, as a matter of equal protection, plaintiff should have been afforded, along with the procedures that were utilized, the procedures outlined in 7400.5D for disciplinary cases which go towards the reliability of the factfinding process. At a minimum this should have included a staff representative and a finding by the I.D.C. that there was a substantial factual basis to conclude that plaintiff was in danger if he remained in general population and that he was in need of protective custody. It is not necessary for me to spell out all the procedures which should have been utilized be-

cause the most this court would order here as a result of the procedural deprivations would be that the correct procedures be followed by the prison officials in order that a proper determination regarding plaintiff's need or lack of need for administrative segregation be made. Since plaintiff is no longer confined in administrative segregation, such a course of action is not called for. Suffice it to say that the procedures employed here were constitutionally inadequate.

However, I believe that, as a matter of law, it would be inappropriate to impose damages on any of the defendants. Defendants are entitled to a qualified immunity, i. e., the defense of good faith. *See Butz v. Economou, et al.,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). That means that if the defendants believed in good faith that their conduct was lawful and this belief was reasonable, they cannot be held liable in damages. *See Clark v. Zimmerman,* 394 F.Supp. 1166 (1975). Even though defendants have not specifically pleaded this defense, it is obvious from the record that it applies. Plaintiff was basically afforded the procedures outlined in 7400.5D applicable to administrative segregation cases. *See supra.* There would be no reason for any of the defendants to believe that these procedures would be constitutionally deficient in this particular case. *See Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). Plaintiff does not really allege that any of the defendants were actually acting in a capricious or bad faith manner, nor is there evidence from which that could be inferred. And there were good faith efforts made to transfer plaintiff to the general population

5. However, it is not known whether the requirement that the need for long-term protection be well documented was met. *See* 7500.5D, § 11(a)(2).

6. It is not necessary to decide here exactly how long an inmate in this position could be held in administrative segregation without the additional procedures called for here. Suffice it to say it would be significantly shorter than plaintiff's stay in the unit.

7. Plaintiff was given a written statement prior to his placement in segregation, *see supra.* However, the decision to keep him in segregation must be made by the I.D.C. after the hearing. Then plaintiff needs a written statement as to the evidence relied on and the reasons for the decision in order to preserve a record of the proceedings and so that he can adequately prepare an appeal. *See Wolff v. McDonnell,* 418 U.S. 539, 564–565, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

of another institution. Furthermore, except as to defendants Jacobsen and Fenton, the only connection the other defendants seem to have to the case is the fact that they were a part of plaintiff's unit team and, therefore, possibly reviewed the situation. This does not sufficiently implicate them in the constitutional violation. Lastly, given the fact that I do not believe that there has been any substantive due process violation here, *see infra* which means that plaintiff's job was not lost through arbitrary or capricious action, plus the fact that plaintiff is not constitutionally entitled to a particular prison job and did not lose any good time to which he would otherwise have been statutorily entitled (i. e., he did not have any good time forfeited or withheld), it would not be appropriate to award as damages the extra good time he might have earned had he not been placed in administrative segregation and lost his job.[8]

 Finally, as to plaintiff's substantive due process claim, the claim that he has been arbitrarily or capriciously placed in administrative segregation, I believe it has no merit. As stated, prison officials have wide discretion, especially in the classification of prisoners, and I believe a sufficient basis now exists on the record to support the finding by the prison official defendants that plaintiff would have been in danger if he remained in the general population at Lewisburg and that he was in need of protective custody. The prison staff drew rational inferences from the facts presented in making their determination and placing plaintiff in administrative segregation was not an arbitrary or capricious act. This is not changed by the fact that plaintiff also provides an explanation of the facts which I believe is rational and which might lead to the conclusion that his life was not in danger. This court does not sit as the fact finder here. The substantive due process review here is not whether this court believes that plaintiff's life may have been in

danger, but, rather, whether the prison officials' determination that plaintiff's life was in danger was rational and whether it was an arbitrary or capricious act to place him in administrative segregation. As stated, I believe it clearly was not such an act and, therefore, there has been no substantive due process violation. *Cf. Beatham v. Manson*, 369 F.Supp. 783 (D.Conn.1973).

---

**8.** It must be remembered that the constitutional violation here occurred in regard to the *placement* of plaintiff in administrative segregation, not in the taking away of the job. I have only considered the claim for extra good time in the context that it is arguably a measure of damages for the loss sustained by being placed in administrative segregation absent procedural due process.