Robert Grant **DIEHL**, Plaintiff,

v.

Vincent Edwin **GAVIN**, Defendant.

**Civ. A. No. 82–0716.**

United States District Court,
M.D. Pennsylvania.

May 16, 1984.

Timothy J. O'Connell, Turner & O'Connell, Harrisburg, Pa., for plaintiff.

Stephen R. Tully, Tully & Levitz, P.A., Baltimore, Md., for defendant.

**1.** An order granting judgment in favor of the Town of Hancock, Maryland, was entered in this matter on May 18, 1982.

## MEMORANDUM

CALDWELL, District Judge.

This memorandum accompanies a verdict entered today in favor of the defendant, Vincent Gavin, following a non-jury trial[1] and constitutes this court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a).

The case before us is a civil rights action filed pursuant to 42 U.S.C. § 1983. The plaintiff's complaints concern an incident that occurred on January 16, 1980, when defendant Gavin, a police officer employed by the Town of Hancock, Maryland, detained the plaintiff and two friends at a location in Pennsylvania. All three individuals were subsequently arrested by the Pennsylvania State Police and charged with possession of marijuana, and plaintiff was in jail several hours before making bail. On June 12, 1980, the charges were dropped or dismissed.

Plaintiff contends that his detention by defendant on January 16 was illegal and infringed upon his liberty interests under the 14th Amendment of the United States Constitution. He seeks to recover various out of pocket expenses incurred as a result of his detention, as well as general damages for the constitutional deprivation. After viewing the witnesses and receiving the testimony, however, we conclude that the defendant Gavin had a reasonable suspicion that a crime had occurred and probable cause to detain the plaintiff and his companions.

In order to assess the decisions made by defendant Gavin on January 16, 1980, one must understand the background and relationship of Gavin and Diehl. Defendant Gavin became Chief of Police of Hancock, Maryland, on November 29, 1979, just six weeks prior to the incident that gave rise to the present action. Gavin had been on the City of Baltimore police force since 1971 and had received training and experience in narcotics and in the issuance of search and

seizure warrants. He was at the top of his police cadet class and had advanced to Detective Sergeant prior to assuming his duties in Hancock. Shortly after his arrival in Hancock, defendant stopped a vehicle for traffic violations and encountered the plaintiff, who was a passenger. The plaintiff became unruly during the course of the stop and resisted Gavin's attempt to arrest him. Gavin described plaintiff at the time as being wild and intoxicated. Although handcuffed Diehl escaped from Gavin's police car and in a brief time was captured nearby by the Maryland State Police. When taken to the police station plaintiff continued his erratic behavior and threatened to "get" Gavin.

In the days that followed Gavin received reports that plaintiff was continuing his threats to get even. On January 16, 1980 Gavin observed Diehl in a vehicle that was cruising the main street of Hancock. As the vehicle passed Gavin on several occasions, the three occupants, including plaintiff, "eyeballed" the officer. The plaintiff acknowledged that he and his friends were just riding around and having a few beers.

On returning to the police station that day, Gavin received an anonymous phone call to the effect that Diehl was going to Gavin's house to "get" him. The caller, whose identity remains unknown, also mentioned guns. Gavin became apprehensive after this call because the Hancock area had experienced a rash of arson fires and similar calls had served to divert the police away from points where fires were started. Although Gavin began to drive toward his home about ten miles away in Pennsylvania, he turned around before reaching his destination and returned to Hancock because he had concluded that this call was designed to draw him away from the town. When he found nothing was amiss in Hancock he again decided to take a quick trip to his home. As he drew within about a mile of his residence he observed smoke rising from the vicinity of his home and at the same time saw the vehicle in which Diehl had been riding earlier. The vehicle was exiting from a private lane that led only to Gavin's home. The vehicle's rear curtains, which had been open earlier, were now drawn so that defendant could not tell who was in the vehicle. Suspecting that the occupants of the vehicle had started a fire at his home, Gavin called the Maryland State Police for assistance and followed the vehicle to a restaurant, where he held the occupants until a Maryland State Trooper arrived.[2] The plaintiff was hiding on the floor in the rear of the vehicle.

The defendant then went to his home and found that it was not burning. When he returned to the restaurant, the Pennsylvania State Police were present. The vehicle was searched and a small amount of marijuana was found. The three occupants were arrested by the Pennsylvania State Police and plaintiff was detained for several hours until he made bail. The charges against defendant were dismissed because the county court in Pennsylvania suppressed the seizure of the marijuana.

Although this court is not aware of the specific evidence received by the county court, we feel that defendant's actions were legally supportable. Even were we to conclude, as did the county court, that Gavin's actions were unconstitutional, however, we would not be bound to find for the plaintiff in the context of a civil rights action.

■ The United States Supreme Court, in such cases as *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) and *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), has recognized that the defense of good faith is available to police officers in actions brought against them under 42 U.S.C. § 1983. The test of whether a good faith defense will lie is not whether the action taken by the officer is constitutional or unconstitutional or whether it was supported by probable cause. Rather it is

---

**2.** Gavin called the Maryland State Police because his radio frequency was limited. He asked for assistance and that the Pennsylvania State Police be summoned because the restaurant was in Pennsylvania.

whether the officer believed in good faith that his actions were legal and whether that belief was reasonable. *See, e.g., Morrison v. Fox,* 483 F.Supp. 390, 395 (W.D.Pa. 1979). The court in *Clark v. Zimmerman,* 394 F.Supp. 1166 (M.D.Pa.1975) summarized these principles as follows:

> Good faith is an affirmative defense for police officers charged in a civil rights action under 42 U.S.C.A. § 1983 with the violation of plaintiff's constitutional rights. If plaintiff proves that police officer made an arrest without probable cause, conducted a search violative of the fourth amendment, or otherwise violated his constitutional rights, the officer still is not liable for damages if he proves good faith and reasonable belief in the validity of the arrest, search, or other unconstitutional act. To prevail in this defense, the police officer need not allege nor prove probable cause to arrest or search in the constitutional sense or that any other act was constitutional. Rather the officer must prove: (1) that he believed, in good faith, that his conduct was lawful (subjective standard) and (2) that his belief was reasonable (objective standard). Thus if a factfinder decides that a police officer *reasonably believed in good faith* that his conduct was constitutional, the factfinder must decide in favor of the officer, even through his conduct in fact was violative of plaintiff's constitutional rights. As a matter of constitutional law and common sense, a law enforcement officer is entitled to this defense and this protection. [citations omitted]

*Id.* at 1176 n. 2.

In the present case, we have no doubt that Gavin sincerely believed his house was on fire and that the occupants of the vehicle he observed were involved. Gavin had had a confrontation with Diehl only a few weeks earlier and had been threatened by Diehl. These threats were reported to Gavin as continuing, and when he saw Diehl in the vehicle in Hancock, Diehl's "eyeballing" actions were reasonably perceived as a continuation of the animosity. The phone call further aroused the officer's suspicions, and when he went to his home (located in a remote and wooded area over the state line) he observed the vehicle in which Diehl had been riding a short time earlier. Mud on the vehicle indicated it had traversed the isolated private road past Gavin's residence, and where no other residents lived at the time. The smoke visible from the area of defendant's home gave further weight to his decision to detain the vehicle and investigate, particularly because it emerged from the lane leading to his home and was then closed from view by curtains which covered the rear and side windows. Plaintiff's act in hiding in the vehicle would further arouse Gavin's suspicions of foul play.

We give no weight, nor should we, to the fact that the smoke was a false alarm. All of the circumstances on January 16, 1980, would certainly cause a reasonable policeman to suspect that an arson had taken place. While it is regrettable that the incident occurred, liability under 42 U.S.C. § 1983 cannot be imposed on the defendant, whose actions, we have concluded, were taken in good faith. We have no doubt that Gavin reasonably believed in good faith that his conduct was constitutional and therefore judgment must be entered in favor of defendant and against the plaintiff.