Bruce WALLACE

v.

Lowell D. HEWITT, Superintendent and Carson, Curtis C., Records Clerk.

Civ. No. 76–1299.

United States District Court,
M. D. Pennsylvania.

Nov. 12, 1976.

Bruce Wallace, pro se.

## MEMORANDUM

NEALON, Chief Judge.

In this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Court is faced with complex questions regarding the interaction of this civil rights complaint with a previously dismissed petition for habeas corpus filed by the same prisoner. Plaintiff is presently incarcerated at the State Correctional Institution in Huntingdon, Pa. The action has been brought against the superintendent at Huntingdon and a records clerk for their roles in transferring plaintiff to Maryland to face criminal charges there. Plaintiff requests damages in the amount of $10,000 from each defendant.

In a pro se petition for habeas corpus filed August 17, 1976,[1] plaintiff attacked the validity of detainers placed against him by the State of Maryland on May 24, 1976 while he was a sentenced prisoner incarcerated at Huntingdon. Pursuant to those detainers, plaintiff had been transferred to Maryland, tried on charges there, and returned to Huntingdon. On September 7, 1976, plaintiff was ordered to amend his habeas corpus petition to allege exhaustion of remedies under the Interstate Agreement on Detainers, Md. Code art. 27, §§ 616A–616R.[2] Plaintiff persisted in the view that the Uniform Criminal Extradition Act, 19 Purdon's Pa.Stat.Ann. § 191.1 et seq. (1964), was applicable to his case and that its provisions had been violated.[3] On September 29, 1976, this Court held that:

---

1. *Wallace v. Commonwealth of Pennsylvania*, Civil No. 76–1052 (M.D.Pa.)

2. Pennsylvania is also a party to the Agreement. See 19 Purdon's Pa.Stat.Ann. § 1431 et seq. (1964).

3. The Extradition Act is inapplicable to persons, such as plaintiff, who are sentenced prisoners in Pennsylvania and who are facing crim-

inal charges in another state which is also a party to the Interstate Agreement on Detainers. The Extradition Act, while containing some language possibly applicable to sentenced prisoners as well, should be construed in light of the Agreement, enacted 18 years later in 1959. Article III(a) of the Agreement protects persons who have "entered upon a term of imprisonment"; similarly, Article IV(a) speaks of persons who are "serving a term of imprison-

[w]hether the Interstate Agreement on Detainers is applicable to petitioner's transfer to Maryland, or, as petitioner alleges, the Uniform [Criminal] Extradition Act is applicable, petitioner must first resort to state courts to test the legality of his confinement. As set forth in the Order of September 7, petitioner has a remedy in the state courts of Maryland if the Interstate Agreement on Detainers has been violated. For a failure to provide a timely extradition hearing, Pennsylvania state courts will review the confinement of persons in Pennsylvania custody. Either way, exhaustion of state remedies will be required. (footnotes and citations omitted).

Consequently, plaintiff's habeas corpus petition was dismissed for failure to exhaust available state remedies.

Sixteen days after the dismissal, on October 15, 1976, plaintiff filed this action.[4] Because adequate financial information has been supplied indicating plaintiff qualifies, permission to proceed *in forma pauperis* will be granted. Since it is not questioned that the Interstate Agreement of Detainers and the Uniform Criminal Extradition Act are constitutional and comport with the requirements of due process, plaintiff's claim for damages must be predicated, as was his petition for habeas corpus, on a failure to comply with the provisions of the Extradition Act. Indeed, a careful comparison of the complaint and the provisions of § 10 of the Extradition Act demonstrate that the essence of his civil rights action is a viola-

tion of the Act:[5] the complaint alleges that he waived no rights, was never served with warrants, never appeared before a judge until his trial in Maryland, and was not permitted to challenge the validity of the charges until after his transfer while being tried; § 10 of the Act mandates an immediate appearance in court prior to extradition, notice of the demand for extradition and of the crime being charged, and the opportunity to test the legality of the arrest through the writ of habeas corpus.[6] 19 Purdon's Pa.Stat.Ann. § 191.10 (1964). It is apparent that plaintiff would in no way be entitled to damages unless defendants have at least violated the provisions of either the Extradition Act or the Agreement. Because of the identity of the subject matter upon which both the petition for habeas corpus relief and the complaint for § 1983 damages are based, and because there has been no exhaustion of equitable judicial remedies available in state courts to challenge the propriety of his transfer from Huntingdon to Maryland, the question presently before the Court is whether this action should be permitted to proceed, or whether this action should be dismissed as "frivolous" under 28 U.S.C. § 1915(d). *See Clark v. Zimmerman*, 394 F.Supp. 1166, 1177–78 (M.D.Pa.1975).

Clearly, § 1983 applies to plaintiff's claim for damages notwithstanding that following exhaustion of judicial remedies, he could be entitled under habeas corpus to release from custody. *See Wolff v. McDonnell*, 418 U.S. 539, 554–55, 94 S.Ct. 2963, 41

ment." *See* 19 Purdon's Pa.Stat.Ann. § 1431 (1964).

4. There is no indication that plaintiff has filed suit in a state court alleging either the violation of the Extradition Act or of the Agreement. Such a filing, while desirable, would only reinforce the disposition that has been made in this case.

5. Plaintiff has previously employed the provisions of the Act to his advantage: While an *unsentenced* prisoner, plaintiff faced detainers that were subsequently voided by a state court because the provisions of the Uniform Criminal Extradition Act were not followed. *See* Order of September 7, 1976, in *Wallace v. Hewitt*, Civil No. 76–1052 (M.D.Pa.)

6. The rights provided by the Extradition Act make much sense in the case of a person arrested to face charges in another state or in the case of an unsentenced prisoner (who might be put on parole, sentenced to time already served, etc.), but very little sense in the context of a sentenced prisoner, such as plaintiff. For sentenced prisoners the primary concern is a rapid disposition of the charges in the other state. To that end the Interstate Agreement on Detainers mandates fewer formalities and only those procedures designed to insure prompt disposition.

L.Ed.2d 935 (1974); *Preiser v. Rodriguez*, 411 U.S. 475, 493–94, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[7] Merely the fact that § 1983 applies, however, does not establish either that § 1983 has been violated or that the courts must automatically permit the action to proceed. *See, e. g., Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

## I.

 In the first instance, there appears to be no violation of § 1983. Plaintiff asserted in the earlier habeas corpus action that there had been no compliance with the Extradition Act; the claims made in this § 1983 action bear a substantial similarity to certain provisions of that Act. Plaintiff could argue that, since the Act has been violated, so has due process and, since state courts would not provide a *damage* remedy for violations of the Act, he should be permitted a damage remedy under § 1983. However, as discussed earlier, when detainers are filed against sentenced prisoners, the Interstate Agreement on Detainers is applicable, and not the Uniform Criminal Extradition Act.[8] Alternatively, plaintiff could argue on the basis of the Agreement. However, as indicated by the Order of September 7 in the habeas corpus action[9] and as revealed by a careful examination of the § 1983 complaint, there are no allegations that would establish a violation of the Agreement sufficient to constitute a violation of due process. The Agreement, for example, requires a 30-day waiting period after the detainers are filed, 19 Purdon's Pa.Stat.Ann. § 1431 (Art. IV(a)) (1964), trial within 120 days after arrival in the receiving state, *id.* (Art. IV(c)), and dismissal of pending charges if a prisoner is returned to the sending state without having been tried, *id.* (Art. III(d)). One and one-half months after the detainers were filed, plaintiff was sent to Maryland to stand trial, and one month thereafter plaintiff, having been tried, was returned to Huntingdon. While the Agreement also requires that a prisoner be informed of the contents of the detainer, *id.* (Art. III(c)), and plaintiff has alleged that he "was not read or served a warrant," the purpose of this provision is to permit a prisoner to receive a prompt disposition of outstanding detainers. Since plaintiff received such a disposition, there has been no violation of due process growing out of the Interstate Agreement on Detainers.[10]

 Plaintiff will not be permitted to amend his complaint to allege violations of

---

**7.** The Court in *Wolff* held that:

 . . . *Preiser* expressly contemplated that claims properly brought under § 1983 could go forward *while* actual restoration of good-time credits is sought in state proceedings. 418 U.S. at 554, 94 S.Ct. at 2974 (citation omitted; emphasis supplied). The application of this quotation, and the citation in *Preiser*, 411 U.S. at 499 n. 14, 93 S.Ct. 1827, is limited to cases where the simultaneous § 1983 suit attacks the *conditions* associated with confinement, and should not be extended to cases, such as the instant one, where the § 1983 suit attacks the very same question (of *legality* of confinement) that was, or could be, litigated in state proceedings. *See* text *infra.*

**8.** *See* note 3 *supra.*

**9.** Plaintiff, was ordered to allege, *inter alia*, what violations of the Interstate Agreement on Detainers occurred, after it was noted that the Agreement, and not the Extradition Act, was probably applicable to his transfer. Plaintiff in his response persisted in the view that the Extradition Act was applicable to his case.

**10.** In another case involving a sentenced prisoner facing charges in another party state, a court in this district has held meritless a civil rights claim that the Extradition Act had been violated when the evidence showed that there had been compliance with the Agreement. *See Thompson v. Hewitt*, Civil No. 75–1432 (M.D. Pa., Mar. 11, 1976) (Muir, J.). In *Thompson*, compliance with the Agreement was established by the record; here, the lack of merit is established by the failure to plead any facts constituting a violation.

 The holding today is limited to a determination that the Extradition Act is inapplicable, and that there are no allegations of facts constituting a violation of the Agreement sufficient to state a claim for violation of due process. State courts, of course, are not foreclosed from determining that, as indicated by additional facts, the Interstate Agreement on Detainers has been violated and that plaintiff is entitled to release or even damages.

the Agreement and of due process: since becoming aware that the Agreement was the applicable statute, he has already had two opportunities, once when amending his habeas corpus petition and once when filing this § 1983 complaint, to allege violations of the Agreement. He has failed to do so, and, from all that appears, the Agreement has not been violated. *Cf. Mukmuk v. Commissioner of Department of Correctional Services,* 529 F.2d 272 (2d Cir. 1976). Moreover, even if a cause of action were established under § 1983 and the due process clause for violation of the Agreement, the Court would decline to exercise its jurisdiction in this case.

## II.

■ There are circumstances under which the federal district courts must abstain from reaching the merits of constitutional complaints. Most common are the cases where the injunctive power of a federal court is sought. In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), a plaintiff sought to enjoin a criminal prosecution, pending against him, which he alleged inhibited the exercise of his First Amendment rights. The Court abstained, holding that this plaintiff could adequately protect his First Amendment rights in defending against the prosecution itself. In *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), this same principle was found applicable to a civil proceeding under a state's nuisance statute. Again, although the plaintiff contended that there existed a threat to constitutional rights, the Court held that respect for the efficacy of important state functions required the invocation of the doctrine of abstention. And, in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Court held abstention appropriate since the relief fashioned by the district court represented an intrusion into the functioning of internal municipal affairs unjustified by the extent of constitutional deprivations.[11] *See id.* at 376–380, 96 S.Ct.

598. Since there was no pending action of either a civil or criminal nature, *Rizzo* makes it clear that the extent of the deprivation and the importance and sensitivity of the state function are factors which may by themselves justify abstention. *See also Wallace v. Kern,* 520 F.2d 400 (2d Cir. 1975), cert. denied, 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976).

The doctrine of abstention has been applied in the lower federal courts in damage actions under § 1983. In *Fulford v. Klein,* 529 F.2d 377 (5th Cir. 1976), and *Clark v. Zimmerman,* 394 F.Supp. 1166 (M.D.Pa. 1975) (Sheridan, C. J.) the purported constitutional deprivations arose out of criminal prosecutions; appeals were still pending. In *Fulford* it was held that an action for damages could not be prosecuted while there was an appeal pending and "before all state remedies have been exhausted. . . ." 529 F.2d at 378. The damage claim under § 1983 was viewed as a "thinly disguised circumvention of state remedies." *Id.* at 381. The facts were very similar in *Clark,* a case arising in this district before the late Chief Judge Sheridan. In language with an application by analogy to the instant case, Chief Judge Sheridan stated that:

> (t)o allow state criminal defendants to litigate their constitutional claims in civil rights suits for money damages before completion of the state criminal process would invite a flanking movement against the system of state courts . ., thereby subverting the orderly functioning of the state criminal process.

394 F.Supp. at 1174. The court invoked abstention, and dismissed the case as "frivolous" under 28 U.S.C. § 1915(d).

Finally, in the case of *Mastracchio v. Ricci,* 498 F.2d 1257 (1st Cir. 1974), damages were sought under § 1983 on the ground that, while plaintiff had been previously convicted on criminal charges, he possessed newly discovered evidence that a member of a police department had committed per-

---

11. Note also that the doctrine of abstention has application when there are unresolved questions of state law, resolution of which would avoid determination of a constitutional issue. *See Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

jury while testifying. The appeal of the plaintiff's conviction had been unsuccessful and there were no pending state court actions. But the newly discovered evidence might have entitled the plaintiff to relief in state courts by way of a motion for a new trial.

> Since the prospect of further state court action is very real, and since by its nature the purpose of this state proceeding will be to call in question the validity of the criminal conviction, . . . the matter in issue which has not already been presented to the state courts should not be heard in federal court until the state action has been completed.

*Id.* at 1259. In both *Mastracchio* and the case presently before the Court, plaintiffs sought federal damage remedies despite the fact that available to them were state court remedies which would entitle them to release.[12]

■ On the facts of this case, abstention is appropriate. While most cases in which abstention has been ordered in a § 1983 damage action have involved pending or available criminal appeals or collateral attacks, the orderly functioning of other aspects of the state criminal justice system requires that they be free from federal interference as well, unless intervention is absolutely necessary to prevent irreparable harm to constitutional rights. *See Younger*, 401 U.S. at 43–49, 91 S.Ct. 746. Here, the concern is that plaintiff, in refusing to resort to the state processes that are available to him and by instead filing a § 1983 action for damages, is "subverting the orderly functioning" of the extradition and detainer systems. *See Clark*, 394 F.Supp. at 1174. If plaintiff is correct in his contentions, he is entitled to something more than damages[13] and something that the federal courts cannot at this time give him: release from custody. Admittedly, the doctrine of abstention is difficult enough for those trained in the law to understand and apply. This much should be clear in this, the second action filed by plaintiff in the federal courts on this matter: if plaintiff has a complaint under the Interstate Agreement on Detainers, his remedy is in the state courts of Maryland. Damages may ultimately be available to plaintiff after he has litigated the propriety of his transfer to Maryland in state courts.[14] *See Fulford*, 529 F.2d at 382.[15]

Since plaintiff has not alleged any violations of the Interstate Agreement on Detainers, and since, in any event, this Court will abstain from a determination on the merits of his complaint until after he has

---

**12.** The situation in *Mastracchio*, where the civil rights plaintiff was in a position to vindicate rights and obtain relief other than damages in state courts, should be carefully distinguished from the situation in *Sartin v. Commissioner of Public Safety*, 535 F.2d 430 (8th Cir. 1976). In *Sartin*, state proceedings were closed, and apparently could not be reopened on either direct appeal or collateral attack. Abstention was held inappropriate.

**13.** Damage remedies, even after it is determined that there has been a violation of constitutional rights, are limited by good-faith defenses that may be interposed. *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

**14.** We impose no requirement of "exhaustion" in this case. While courts have sometimes imposed requirements that *administrative* remedies be exhausted before bringing § 1983 suits, *see, e. g., Becker v. Oswald*, 360 F.Supp. 1131 (M.D.Pa.1973), here the alternative remedies are judicial in character. Abstention may have the same *effect* as requiring exhaustion, but it is an analytically distinct doctrine. Exhaustion, where required, is the norm; abstention, when invoked, is the exception.

**15.** The Fifth Circuit in *Fulford* points out that abstention in cases where equitable state remedies are available and damages are sought may create problems with regard to the statute of limitations. In other words, plaintiff may not be able to successfully prosecute suit for release in state courts before being required, by the applicable statute of limitations, to file an action in federal court for damages. However, the statute of limitations governing § 1983 suits is a question of federal law, notwithstanding that periods under state statutes are borrowed. *See Polite v. Diehl*, 507 F.2d 119 (3d Cir. 1974). It is improbable that a federal court would bar an action for damages on the basis of statute of limitations after there had been a prompt successful pursuit of state remedies.

given the state courts an opportunity to consider his rights under the Agreement, this action will be dismissed as frivolous under § 1915(d). *See Clark v. Zimmerman,* 394 F.Supp. 1166 (M.D.Pa.1975).