Carroll D. DERROW, Plaintiff,

v.

Pleasant SHIELDS, Chairman Virginia Parole Board, Defendant.

Civ. A. No. 79–0316(R).

United States District Court,
W. D. Virginia,
Roanoke Division.

Jan. 17, 1980.

Carroll D. Derrow, pro se.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM OPINION

DALTON, District Judge.

Plaintiff, Carroll D. Derrow, a state inmate at the Floyd Correctional Unit, has brought this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, asserting his entitlement to mandatory parole release as provided in § 53–251.3, Code of Virginia (1950), as amended. He contends that the Virginia Parole Board has miscalculated his mandatory parole release date and, in so doing, has denied him due process and equal protection of the law under the Fourteenth Amendment to the Constitution of the United States of America. The plaintiff seeks declaratory relief to compel his release and punitive and compensatory damages for each day of confinement beyond his mandatory release date. The initial issue confronting this court is whether a state prisoner in these circumstances, where his damages claim attacks the validity of his confinement, may immediately proceed under the Civil Rights Act or whether he must first exhaust his state court remedies before pursuing a section 1983 action. This question is addressed in two decisions of the United States Supreme Court, *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

In *Preiser*, three state prisoners brought suit under section 1983 alleging that state prison officials had deprived them of statutory good time in disciplinary hearings violative of due process and equal protection. They sought an injunction directing restoration of the lost credits, which would have resulted in their immediate release from incarceration.

The Supreme Court began its analysis by noting that the traditional scope of habeas corpus encompasses an attack on the legality of confinement and an attempt to secure release from it. 411 U.S. at 484, 93 S.Ct. 1827. Since, in these suits, wrongful deprivation of good time credits would have rendered confinement illegal as of the prisoners' conditional-release date, and since the relief sought, if granted, would have resulted in immediate release from custody, the suits fell "squarely within [the] traditional scope of habeas corpus." *Id.* at 487, 93 S.Ct. at 1835. The Court further stated that any attack on the *fact* or *duration* of confinement, even if it would result only in a reduction of the detention period rather than immediate release, would be sufficient to bring a suit within the core of habeas

corpus.[1] *Id.* The majority then proceeded to find that the specific statutory directive[2] requiring exhaustion of state remedies in federal habeas corpus petitions indicated a legislative intent to make habeas corpus, with its attendant exhaustion requirement, the exclusive method of challenging the validity of confinement, notwithstanding the more general terms of section 1983. *Id.* at 489–490, 93 S.Ct. 1827. To decide otherwise, the court reasoned, would permit circumvention of the exhaustion mandate of section 2254(b) and thereby undermine the integrity of habeas corpus. *Id.*

Drawing on the elastic definition of comity enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court rejected the argument that principles of exhaustion grounded in comity were applicable to state judicial and not administrative actions and found the concept to have "as much relevance in areas of particular state administrative concern as it does where state judicial action is being attacked." 411 U.S. at 491, 93 S.Ct. at 1837. The Court concluded that, especially in relation to the administration of state prisons, where the state's involvement is pervasive, the policy of comity underlying the exhaustion requirement demands that state remedies be pursued prior to seeking release in federal court. *Id.* at 492, 93 S.Ct. 1827.

Although the respondents in *Preiser* were not seeking damages, the Court stated in dictum that when a state prisoner requests damages in a section 1983 action he is attacking something other than the fact or duration of his confinement, and he is seeking something other than his release. *Id.* at 494, 93 S.Ct. 1827. Therefore, such a suit would not fall within the core of habeas corpus, and exhaustion of state remedies would not be necessary before resort to a federal forum. *Id.*

It was this dictum that the court incorporated into its holding in *Wolff v. McDonnell.* There a state prisoner brought a class action alleging *inter alia* that prison disciplinary proceedings violated procedural due process. He sought various forms of relief including restoration of good time and damages for the deprivation of his constitutional right to procedural due process.

Writing for the majority, Justice White found restoration of good time credits without prior exhaustion of state remedies to be forbidden by *Preiser.* 418 U.S. at 554, 94 S.Ct. 2963, 2974. He noted, however, that "the complaint also sought damages; and *Preiser* expressly contemplated that claims properly brought under section 1983 could go forward while actual restoration of good-time credits is sought in state proceedings." *Id.* The Court concluded, therefore, that *McDonnell's* damage claim was properly before the district court, which could determine the validity of the challenged procedures. *Id.* at 555, 94 S.Ct. 2963. Moreover, the district court was authorized to grant a declaratory judgment as a predicate to a damage award and, as an ancillary remedy, where otherwise proper, a prospective injunction barring future enforcement of invalid prison regulations. *Id.* However, the district court was specifically prohibited from ordering the actual restoration of good time already cancelled. *Id.*

The leading case dealing with the *Preiser-Wolff* issue in the Court of Appeals for the Fourth Circuit is *Bradford v. Weinstein*, 519 F.2d 728 (4th Cir. 1974). In that case, the named plaintiffs, disclaiming that the purpose of their suit was to effect their release or to shorten the duration of their confinement, sued under 42 U.S.C. § 1983

---

**1.** The Court also stated that a section 1983 action is the proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody. 411 U.S. at 499, 93 S.Ct. 1827.

**2.** 28 U.S.C. § 2254 provides in pertinent part:
(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant

to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process of the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

for themselves and other inmates similarly situated in the North Carolina correctional system asserting that the proceedings in which they were denied parole did not comport with due process requirements. The Court of Appeals, noting that the plaintiff's suit did not attack the fact or duration of their incarceration, found that this was not a case where the alleged constitutional violations were close to the core of habeas corpus or " 'as close to the core of habeas corpus as an attack on the prisoner's conviction,' as discussed and defined in *Preiser*." 519 F.2d at 733–734. The Court thus concluded that *Preiser* did not preclude a civil rights action challenging the constitutionality of parole hearing procedures and held that *Wolff* authorized a suit for damages under 42 U.S.C. § 1983 without the need for exhaustion of state judicial remedies. *Id.* at 734–735.

■ *Wolff* and *Bradford* clearly mandate that a section 1983 suit challenging institutionalized practices alleged to be constitutionally defective may proceed without exhaustion. However, neither of these cases provide binding precedent in a situation where, as here, the resolution of the civil rights action will necessarily determine the validity or invalidity of the inmate's state confinement. The question remains an open one in this judicial circuit.[3] Although the federal courts are split on the issue, it appears to this court that *Preiser* and *Wolff* provide authority for a conclusion that exhaustion is required in such circumstances.

■ In *Preiser*, the Court rested its holding on an analysis of the scope of habeas corpus, which was defined in terms of issues alone rather than issues and remedies.[4] After finding that an attack on the fact or duration of confinement fell squarely within the "core of habeas corpus," *Id.* at 487, 93 S.Ct. 1827, the Court concluded that Congress had determined that habeas corpus is the appropriate remedy for state prisoners in such instances and that specific determination must override the general terms of section 1983.[5] *Id.* at 490, 93 S.Ct. 1827. Therefore, whenever a state prisoner's attack falls within the core of habeas corpus, the writ of habeas corpus is the exclusive initial remedy and exhaustion of state judicial remedies is mandatory.

■ Although *Wolff* specifically permitted a damages claim to go forward without exhaustion, it is entirely consistent with issue-oriented approach enunciated in *Preiser*. While *Wolff* is unclear as to whether the loss of good time credits could be claimed as an element of a damages recovery, we do not believe the Court so intended. See *Fulford v. Klein*, 529 F.2d 377, 381 (5th Cir. 1976); *aff'd en banc*, 550 F.2d 342 (5th Cir. 1977). From the Supreme Court's

---

**3.** The only Fourth Circuit case to address this *Preiser-Wolff* issue was *Rimmer v. Fayetteville Police Dept.*, 567 F.2d 273 (4th Cir. 1977). In that case, the Court, after recognizing the apparent tension between the two Supreme Court decisions and the exhaustion requirement of 28 U.S.C. § 2254(b) in cases involving issues of the validity of a state court conviction, reserved the question and based its decision on other grounds.

**4.** The leading proponent of this view has been the Court of Appeals for the Fifth Circuit. The rule in that circuit is that any challenge to the *fact* or *duration* of a prisoner's confinement is properly treated as a habeas corpus matter, whereas challenges to *conditions* of confinement may proceed under section 1983 without any requirement of exhaustion of state judicial remedies. [Moreover], courts should be governed by these classifications regardless of the relief sought or the label placed by the petitioner upon such action. See *Johnson v. Hardy*,

601 F.2d 172, 174 (5th Cir. 1979), citing *Fulford v. Klein*, 529 F.2d 377 (5th Cir. 1976), *aff'd en banc*, 550 F.2d 342 (5th Cir. 1977); *Meadows v. Evans*, 529 F.2d 385 (5th Cir. 1976), *aff'd en banc*, 550 F.2d 345 (5th Cir. 1977); *Watson v. Briscoe*, 554 F.2d 650 (5th Cir. 1977); *See also, Guerro v. Mulhearn*, 498 F.2d 1249 (1st Cir. 1974); *Mastracchio v. Ricci*, 498 F.2d 1257 (1st Cir. 1974); *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975); *Wallace v. Hewitt*, 428 F.Supp. 39, 42 n. 7 (M.D.Pa.1976).

**5.** The Court in *Preiser* did, of course, state that in the case of a damages claim habeas corpus was *not* an appropriate or available federal remedy. 411 U.S. at 494, 93 S.Ct. 1827. However, this determination was based upon the assumption that if a state prisoner is seeking damages he is attacking something other than the fact or length of his confinement—the traditional purpose of habeas corpus. *Id.*

delineation of permissible and impermissible uses of the district court's injunctive and declaratory powers on remand, we conclude that the Court authorized the district court to examine the constitutionality of the state prison procedure, and to award damages which were incidental to an invalid proceeding. Since the district court was expressly forbidden to enter an injunction concerning the merits of the issue before the state administrative body, the proper length of confinement, it follows as a matter of logic that damages could be awarded by the district court only incident to the invalid process itself—not to recompense the effect such a proceeding may have had on the length or legality of the plaintiff's confinement.[6] It is thus apparent that the Court in *Wolff* focused on the issue involved rather than the remedy sought.

■ Accordingly, on our reading of *Wolff* and *Preiser*, we adopt the position of the Court of Appeals for the Fifth Circuit[7] and hold that habeas corpus, with its attendant exhaustion requirement, is the exclusive initial cause of action where the basis of the plaintiff's claim goes to the *fact* or *duration* of his confinement, whereas challenges to *conditions* of confinement may proceed under section 1983 without any requirement of exhaustion of state judicial remedies. We further hold that courts should be governed by these classifications irrespective of the relief sought or the label placed by the petitioner upon such action.

■ Our decision is buttressed by strong comity considerations.[8] Indeed, if we were to believe that on remand from the *Wolff* opinion the district court could determine that a prisoner was entitled to monetary damages for the prison disciplinary body's cancellation of good time credits, any concurrent state action would be an exercise in futility. Moreover, to decide the case at bar differently would elevate form over substance and allow a state prisoner to circumvent the exhaustion requirements of 28 U.S.C. § 2254(b) by simply appending a prayer for damages to his claim and labelling it as a civil rights action. This is one of the evils that the Supreme Court in *Preiser* specifically sought to eradicate, *See* 411 U.S. at 489–490, 93 S.Ct. 1827, and this court today closes the availability of this avenue to state prisoners.

■ We need to clarify the impact of this decision on the particular area of procedural due process. Challenges of the sort in *Wolff* may be raised on two levels. First, a prisoner may challenge the constitutionality of prison procedures on their face. Second, he may challenge those procedures as they were applied to him in a specific instance. When, as was the case in *Wolff* and *Bradford v. Weinstein, supra,* a decision in a civil rights action would not reflect on the validity or invalidity of the plaintiff's confinement, a federal court may decide such a challenge immediately and award nominal damages or other appropriate redress. *Cf. Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 281, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (requiring a civil rights damages claimant to first show his constitutional rights were infringed and second that infringement was the cause of his loss of employment). Generally, a challenge at the first level is less likely to involve consideration of issues determinative of the fact or duration of confinement, as deficient procedures may be casually unrelated to the final outcome under such procedures. A federal

---

6. This interpretation of *Wolff* is entirely consistent with *Preiser* in that habeas corpus, with its concomitant exhaustion requirement, is the exclusive initial remedy in a cause of action which goes to the traditional core of habeas corpus.

7. *See* note 4, *supra.*

8. The Supreme Court in *Preiser* stated that the rule of exhaustion in federal habeas corpus is rooted in consideration of federal-state comity

and, citing from *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), defined comity as "a proper respect for state functions . . . ." 411 U.S. at 491, 93 S.Ct. at 1837. The Court further indicated that comity has as much relevance in areas of particular administrative concern as it does where state judicial action is being attacked and noted that this is especially true in a state's administration of its prisons. *Id.* at 491–492, 93 S.Ct. 1827.

court should, however, refuse to entertain a challenge at either level, prior to exhaustion, where a decision would bear on the validity or invalidity of the plaintiff's confinement.

In the case at bar, the plaintiff asserts his present entitlement to mandatory parole release. This is clearly a claim going to the core of habeas corpus and requires exhaustion of state judicial remedies prior to resort to the federal courts. However, he also seeks damages for alleged misapplication of Virginia's statutory parole guidelines. To reach a judgment in the plaintiff's section 1983 action would necessarily involve a determination of the validity or invalidity of his present confinement. As indicated by the *Preiser-Wolff* rule, the plaintiff's challenge, which goes to the very fact and duration of his confinement, falls precisely within the category of cases at the "core of habeas corpus." Full exhaustion of state judicial remedies, if adequate and available, is thus required before this court will entertain the plaintiff's claims. The remaining question with respect to plaintiff's claims is whether the Virginia courts will take cognizance of them in a state habeas corpus proceeding.

In Virginia habeas corpus lies in cases where petitioner is being "detained without lawful authority." Va.Code § 8.01–654. Although unlawful detention has traditionally been narrowly construed by the Virginia Supreme Court, it has become apparent that the Court is in the process of redefining its traditional notions of what constitutes a defect rendering a detention one without lawful authority. In *Griffin v. Cunningham*, 205 Va. 349, 355, 136 S.E.2d 840, 845 (1964), the Virginia Supreme Court stated that "[i]t is well settled that the deprivation of a constitutional right of a prisoner may be raised by habeas corpus." This rule was refined in *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1975), where the court held "that the principle enunciated in *Griffin* is inapplicable when a prisoner has been afforded a fair and full opportunity to raise and have adjudicated the question of the admissibility of evidence in his trial and upon appeal." This limitation, however, would not foreclose review of a claim that a prisoner had been denied parole in violation of the Virginia and the United States Constitutions. While the Virginia Supreme Court has had the occasion to deny the availability of habeas corpus to test the validity of an underlying conviction of a parolee who has had his parole revoked, *Peyton v. Williams*, 206 Va. 595, 145 S.E.2d 147 (1965), it cannot be stated without reservation that an allegedly constitutionally infirm denial of parole is not reviewable in a court of the Commonwealth by that writ. Given the inability to conclude that there is an absence of an available state corrective process, firmly placed principles of comity dictate deference to state action. *See generally, Durkin v. Davis*, 538 F.2d 1037 (4th Cir. 1976); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

The court is thus of the opinion that petitioner has yet to exhaust remedies available to him in the courts of the Commonwealth.

The plaintiff's complaint will accordingly be DISMISSED WITHOUT PREJUDICE.