**Steven L. THOMAS, Plaintiff, pro se,**

v.

**Christopher DIETZ, Defendant.**

**Civ. A. No. 81–197.**

United States District Court,
D. New Jersey.

April 16, 1981.

Steven L. Thomas, plaintiff, pro se.

J. Michael Blake, Deputy Atty. Gen., State of New Jersey, Trenton, N. J., for defendant.

DEBEVOISE, District Judge.

This action was brought under 42 U.S.C. § 1983 by Steven L. Thomas, a prisoner incarcerated in the New Jersey State Prison at Trenton, against Christopher Dietz, Chairman of the New Jersey State Parole Board. Plaintiff alleges that at the time he was incarcerated on April 21, 1975 his parole eligibility date was set at July 28, 1981. On June 10, 1980, he avers, he "was informed by a subordinate of the defendant, that the New Jersey State Parole Board had changed its interpretation of the laws governing parole eligibility, that this new interpretation was to be applied retroac-

tively, and that as a result of such retroactive application plaintiff would have to serve an additional three years before being eligible for parole", with a new parole eligibility date of July 10, 1984. Plaintiff seeks as relief a declaratory judgment that the acts, policies and practices of defendant violate Article I, Section 9, clause 3 of the United States Constitution; [1] an injunction prohibiting defendant from "imposing punishment on defendant without due process of law"; an injunction reinstating his original parole eligibility date; and punitive damages in the amount of $10,000. He does not allege that he has pursued any available state remedies.

Defendant now moves for "an order granting dismissal of the complaint". Neither defendant's notice of motion nor his brief specifies the nature of the motion; since no affidavits have been submitted, it will be treated as a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. All facts alleged in the complaint, therefore, will be taken as true.

█ As grounds for the motion, defendant argues that plaintiff's complaint must be construed as seeking a speedier release from confinement, for which the sole federal remedy is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Because plaintiff has failed to allege the exhaustion of state remedies, defendant contends, he cannot proceed with a habeas corpus petition at this time. *See* 28 U.S.C. §§ 2254(b) and (c).

In *Preiser*, the Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus". *Id.* at 500, 93 S.Ct. at 1841. Arguably, plaintiff is not seeking

**1.** Article I, Section 9, clause 3 of the United States Constitution prohibits the passage of ex post facto laws by Congress. It will be assumed that plaintiff is relying upon Article I,

Section 10, clause 1, which prohibits the passage of ex post facto laws by the states. *See Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

an immediate or speedier release from prison but merely an opportunity to appear before the parole board at an earlier date. The applicable statute governing entitlement to parole in New Jersey, however, provides that:

An adult inmate *shall* be released on parole at the time of parole eligibility, unless information supplied in the report filed pursuant to section 10 of this act [N.J.S.A. 30:4–123.54] or developed or produced at hearing held pursuant to section 11 of this act [N.J.S.A. 30:4–123.55] indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this state if released on parole at such time . . . .

N.J.S.A. 30:4–123.53 (emphasis added).

While the parole board retains some discretion to deny a prisoner release under a narrowly defined set of circumstances unrelated to the computation of the eligibility date, there is obviously a strong presumption that a prisoner eligible for parole will actually be released. Under principles of collateral estoppel, a federal court determination that a prisoner's parole eligibility date was improperly computed or improperly changed would bind the parole board and largely determine the question of the prisoner's entitlement to release. As the Supreme Court stated in *Preiser*,

[t]his would have the unfortunate dual effect of denying the state prison administration and the state courts the opportunity to correct the errors committed in the State's own prisons, and of isolating those bodies from an understanding of and hospitality to the federal claims of state prisoners . . .

*Id.* at 497, 93 S.Ct. at 1840.

For all intents and purposes, therefore, a prisoner in New Jersey seeking an earlier parole eligibility date states a claim for an earlier release from confinement, a claim which lies at the core of habeas corpus.

Were plaintiff seeking an earlier parole eligibility date alone, *Preiser* would clearly require the dismissal of this action for failure to exhaust available state remedies.

Plaintiff, however, also seeks punitive damages of $10,000. The question is presented, therefore, whether a prisoner may obtain an immediate federal court adjudication of the constitutionality of his confinement, effectively bypassing the exhaustion requirement of the habeas corpus statute, 28 U.S.C. § 2254(b), merely by including a damages claim in his complaint.

In *Preiser*, the Supreme Court held in dictum that "[i]f a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement," and may proceed under § 1983 without first exhausting state remedies. This view was reiterated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), an action brought by a group of prisoners under § 1983 for both restoration of good-time credits *and* damages "for the deprivation of civil rights resulting from the use of . . . allegedly unconstitutional procedures". *Id.* at 553, 94 S.Ct. at 2973. The Supreme Court held in *Wolff* that the district court was precluded, under *Preiser*, from granting restoration of good-time credits before state remedies had been exhausted. As to the claims for damages, however, the Court held that "*Preiser* expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings . . . [I]t was proper for the Court of Appeals and the District Court to determine the validity of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already canceled." *Id.* at 554–55, 94 S.Ct. at 2973–74. The Court further observed in a footnote that "[o]ne would anticipate that normal principles of *res judicata* would apply". *Id.* at 554, n.12, 94 S.Ct. at 2974 n.12.

While the Supreme Court implied in *Wolff* that prisoners may maintain some § 1983 damages claims without prior exhaustion of state remedies, even though federal court adjudication of the damages claims may preclude subsequent state court relitigation of underlying questions of fact

and law, lower courts have given *Wolff* a narrow construction. *See, e. g., Delaney v. Giarrusso*, 633 F.2d 1126 (5th Cir. 1981); *Keenan v. Bennett*, 613 F.2d 127 (5th Cir. 1980); *Derrow v. Shields*, 482 F.Supp. 1144 (W.D.Va.1980); *Wallace v. Hewitt*, 428 F.Supp. 39, 42 at n.12 (M.D.Pa.1976).

"The rule of exhaustion in federal habeas corpus actions", the Supreme Court stated in *Preiser v. Rodriguez, supra*, "is rooted in considerations of federal-state comity." *Id.* 411 U.S. at 491, 93 S.Ct. at 1837. Whether prison inmates challenge state judicial action or state administrative action, "the States have an important interest in not being bypassed in the correction of these problems" and should be given the first opportunity to correct their own errors. *Id.* at 492, 93 S.Ct. at 1837. Were a federal court to make a determination in a § 1983 damages action of precisely the same constitutional claim upon which a prisoner relies to challenge the constitutionality of his confinement, nothing would be left, under principles of *res judicata*, for the state courts to decide.

In *Wolff v. McDonnell*, a challenge to an entire prison disciplinary system, the Supreme Court authorized the district court, on remand, to issue a prospective injunction requiring enactment of proper disciplinary measures and also to award damages for the plaintiffs' prior subjection to an unconstitutional regime. Although the *Wolff* opinion was not entirely clear on the issue, lower courts have interpreted the authority granted to the district court on remand *not* to have included an award of damages to the plaintiffs for loss of their good-time credits. *See Derrow v. Shields, supra*, at 1147. *Wolff* did not, therefore, authorize adjudication by a federal court on a damages claim of the very same issue which, under *Preiser*, the state courts must be given an opportunity to resolve in the first instance on a claim for injunctive relief.

The principle which should govern the availability to prisoners of § 1983 relief without prior exhaustion of state remedies has been stated as follows:

[A]ny challenge to the *fact* or *duration* of a prisoner's confinement is properly treated as a habeas corpus matter, whereas challenges to *conditions* of confinement may proceed under § 1983 without any requirement of exhaustion of state judicial remedies. Courts should be governed by these classifications regardless of the relief sought or the label placed by the petitioner upon such action.

*Johnson v. Hardy*, 601 F.2d 172 (5th Cir. 1979) (emphasis in original); *accord, Wallace v. Hewitt, supra.*

The rule stated in *Johnson v. Hardy, supra*, effectively integrates the holdings of *Preiser* and *Wolff* and will be applied here.

The Third Circuit Court of Appeals, in *Ross v. Meagan*, 638 F.2d 646 (3d Cir. 1981), recently reversed a district court's dismissal of a § 1983 damages action, holding that the district court's characterization of the complaint as "a challenge to the fact or duration of confinement" was erroneous because the complaint sought "an award of damages, not release from confinement". *Id.* at 649, *citing Preiser v. Rodriguez, supra*. *Ross*, however, is distinguishable on its facts and does not control the outcome of the present case.

In *Ross*, two prisoners incarcerated in North Carolina brought a § 1983 action in the District Court for the Eastern District of Pennsylvania, alleging that they had been deprived of their constitutional rights in connection with their arrests in Pennsylvania and subsequent extradition to North Carolina. Appellant Jerryl Martin was arrested on February 15, 1977 by Philadelphia police and charged by the Commonwealth of Pennsylvania with possessing a controlled dangerous substance. While the Pennsylvania charges were being processed, the Philadelphia police discovered an outstanding warrant for Martin's arrest issued by the State of North Carolina. After a hearing on April 25, 1977, Martin was extradited to North Carolina. The opinion of the Court of Appeals does not reveal the ultimate disposition of the Pennsylvania charges. Appellant Daniel Ross was arrested on May 27, 1977 by federal authorities in

Pennsylvania on a warrant issued by a United States Magistrate and charged with the federal offense of flight to avoid confinement, 18 U.S.C. § 1073. On June 2, 1977, the federal charges were dismissed on motion of the United States Attorney, and Ross was turned over to Philadelphia police authorities, who were in possession of a warrant for his arrest on outstanding criminal charges in North Carolina. Ross challenged his extradition by filing a petition for habeas corpus in the Pennsylvania state courts. His petition was unsuccessful, however, and he was then extradited to North Carolina.

In October, 1978, Martin and Ross filed a "joint" § 1983 complaint in the District Court for the Eastern District of Pennsylvania seeking declaratory and monetary relief against two prosecutors, two assistant public defenders, a detective of the Philadelphia police, and the former governor of Pennsylvania. In their complaint, appellants alleged that:

> the defendants conspired to deny their constitutional rights under the fourth and fourteenth amendments, that they denied appellants hearings on probable cause at the time of their arrests, that they deliberately deprived appellants of due process at their extradition hearings, and that they knowingly violated provisions of the Uniform Criminal Extradition Act ....

The district court dismissed the action against the prosecutors and defenders on grounds of absolute immunity. As to the remainder of the complaint, the district court held that plaintiffs were "in effect, protesting the legality of their confinement" and therefore could proceed only by way of a petition for habeas corpus, with its concomitant exhaustion requirement. The district court further found the § 1983 claims to be frivolous.

The Appeals Court affirmed the dismissal of the prosecutors and defenders but held that the district court improperly denied the claims against the remaining defendants without granting leave to amend. While the district court had found the complaint to state a "challenge to the fact or duration of confinement", the Appeals Court observed that appellants sought "an award of damages, not release from their current confinement", and held that appellants should be permitted to pursue their claims, through an amended complaint, without first exhausting state remedies.

The Court of Appeals in *Ross* did not hold that a prisoner suing under § 1983 must be considered to challenge something other than the fact or duration of his confinement *whenever* he includes a count for damages in his complaint, but limited its decision to the facts before it.[2] As the Court properly pointed out, the appellants in *Ross* clearly were neither seeking nor entitled to an immediate or speedier release from their confinement, and therefore were not within the category of plaintiffs relegated by *Preiser* to the exclusive remedy of habeas corpus.

Appellants Ross and Martin sought relief in the form of a declaratory judgment and monetary damages against state officials who, they alleged, had arrested them without probable cause and denied them constitutionally adequate hearings prior to extradition. These allegations in no way presented a challenge to the validity of their convictions in North Carolina on the North Carolina charges or their subsequent incarceration in a North Carolina prison. On the facts alleged, they were not entitled to either an immediate or speedier release from prison but, at the most, an award of damages against the arresting and extraditing officials. Because a resolution by the district court of these claims would not

---

**2.** The Appeals Court in *Ross* quoted *Preiser's* dictum that: "If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release ..." *Preiser v. Rodriguez, supra,* 411 U.S. at 494, 93 S.Ct. at 1838.

For the reasons stated above, however, it seems clear that a prisoner may indeed challenge the fact or duration of his confinement through the medium of a damages action, the favorable resolution of which will entitle him to release from prison by the application of collateral estoppel.

determine issues which *Preiser* requires to be presented to the state courts in the first instance, the Appeals Court quite properly declined to read the complaint as "a challenge to the fact or duration of confinement".

Unlike the complaint in *Ross*, plaintiff's complaint in this action clearly challenges, in all respects, the fact or duration of confinement. Despite the fact that plaintiff seeks punitive damages in his complaint, he can recover those damages only if he first establishes his entitlement to the injunctive relief he seeks: a speedier release from confinement. Plaintiff's complaint, therefore, states a claim which lies at the core of habeas corpus. Before applying to this Court for either a writ of habeas corpus or damages under § 1983, plaintiff must first exhaust available state remedies.

■ Requiring plaintiff to exhaust state remedies in this § 1983 action will, of course, raise novel issues in applying the doctrines of *res judicata* and collateral estoppel. *See generally Preiser v. Rodriguez, supra*, 411 U.S. at 493–94, 497–98, 93 S.Ct. at 1838–39, 1840–41. Insofar as plaintiff seeks monetary relief under § 1983, an unsuccessful prosecution of his constitutional claims in state court would ordinarily preclude relitigation of those claims in the federal court, as long as plaintiff received a full and fair hearing at the hands of the state. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). On the other hand, since the doctrines of *res judicata* and collateral estoppel are not applicable in federal habeas corpus proceedings, *Sumner v. Mata*, 449 U.S. 539, 543–

548, 101 S.Ct. 764, 767–69, 66 L.Ed.2d 722 (1981); *Preiser v. Rodriguez, supra*, 411 U.S. at 497, 93 S.Ct. at 1840; *Salinger v. Loisel*, 265 U.S. 224, 230, 44 S.Ct. 519, 521, 68 L.Ed. 989 (1923), unsuccessful prosecution of plaintiff's constitutional claims in the state court would not bar their relitigation in a subsequent federal habeas corpus proceeding.[3]

Therefore, if plaintiff were first to challenge an adverse state court decision in a habeas corpus action in the federal court, which would be the natural course for him to take, the state court judgment would not be given preclusive effect. The federal court would make its own findings and determination. In a contemporaneous or subsequent § 1983 damages action based upon the same operative facts, one would certainly expect preclusive effect to be given not to the earlier state judgment but to the later federal determination. In those circumstances plaintiff, not the defendant, would be entitled to reap the benefits of the principles of *res judicata* and collateral estoppel.

■ A habeas corpus petitioner is limited, of course, to challenging the fact or duration of his confinement, and may not challenge the conditions of his confinement. If a § 1983 plaintiff challenging the conditions of his confinement and seeking an award of damages were required to present his claim to the state courts in the first instance, he would be deprived forever, by application of the principles of *res judicata* and collateral estoppel, of a federal forum for a hearing of these claims.[4] This was

---

3. While a federal habeas corpus petitioner is not barred by the doctrines of *res judicata* and collateral estoppel from relitigating constitutional claims, factual issues previously determined by a state court are, in certain circumstances, accorded a presumption of correctness by statute, 28 U.S.C. § 2254(d). The presumption is overcome if one or more of seven enumerated conditions calling into question the state fact-finding process are shown to exist, or if the federal court concludes that "the factual determination is not fairly supported by the [state court] record". *See Sumner v. Mata, supra*, 449 U.S. at 550, 101 S.Ct. at 771.

Although this provision gives some preclusive effect to an earlier state court judgment, the federal court remains entirely free to redetermine questions of law and retains a broad discretion to re-examine questions of fact whenever it appears they were not fairly determined by the state. The degree of preclusive effect imposed by § 2254(d) does not approach that imposed by the common law doctrine of collateral estoppel.

4. A § 1983 plaintiff seeking prospective injunctive relief would presumably not be barred by *res judicata* principles insofar as he challenges future violations of his constitutional rights.

the danger which the Supreme Court in *Preiser* expressly addressed when it held that a § 1983 plaintiff who was seeking damages and "attacking something other than the fact or length of his confinement" was not required to exhaust state remedies. *Preiser v. Rodriguez, supra*, 411 U.S. at 493–94, 93 S.Ct. at 1838–39. Under the rule stated in *Johnson v. Hardy* and applied here, however, a prisoner suing under § 1983 would not be required to exhaust state remedies unless he presented a claim for which federal habeas corpus consideration is available under 28 U.S.C. § 2254. He will not, therefore, be deprived of a federal forum for his constitutional claims.[5]

In sum, the sole hardship imposed upon a prisoner by requiring him to exhaust state remedies before litigating a § 1983 damages claim challenging the fact or duration of his confinement is a delay of his right to seek damages in a federal forum coextensive with the delay he already faces in seeking release from confinement. Arrayed against the state's countervailing interest in being permitted to correct its own errors in the first instance, the prisoner's interest in the speedy receipt of damages does not justify a bypass of the habeas corpus exhaustion requirement.

For the foregoing reasons, defendant's motion to dismiss will be granted. To pro- tect plaintiff from a possible statute of limitations bar of his § 1983 damages claims, the action will be administratively terminated with leave to reopen after state remedies have been exhausted pursuant to 28 U.S.C. § 2254(b).[6]

Defendant is requested to submit a form of order consistent with this opinion.

---

*See Wooley v. Maynard*, 430 U.S. 705, 711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977).

5. The Third Circuit has recently stressed the importance of a litigant's access to a federal forum for federal constitutional claims. *See Lehman v. Lycoming Co. v. Children's Services Agency*, 648 F.2d 135 at 144–145 (3d Cir. 1981).

6. 42 U.S.C. § 1983 is not governed by a federal statute of limitations. Federal courts, there- fore, must apply " 'the limitation ... which would be applicable in the courts of the state in which the federal court is sitting had an action been brought under state law' ". *Davis v. Unit- ed States Steel Supply*, 581 F.2d 335 (3d Cir. 1978), *quoting Polite v. Diehl*, 507 F.2d 119, 122 (3d Cir. 1974) (en banc); *see also, Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

Insofar as this damages action is brought against defendant Dietz in his individual capac- ity, it is presumably governed by New Jersey's six-year general statute of limitations, N.J.S.A. 2A:14–1. Although New Jersey purports to bar any action in its courts brought by a prisoner against a public employee "until such prisoner shall be released from institutional confine- ment", and to toll the statute accordingly, N.J. S.A. 59:5–3, this tolling provision would appear to be "inconsistent with the federal policy un- derlying the cause of action" under § 1983, and not appropriately applied in the federal courts. *Johnson v. Railway Express Agency, supra*, at 465, 95 S.Ct. at 1722.

Insofar as the damages action is brought against defendant Dietz in his official capacity, it would presumably be barred altogether by the Eleventh Amendment, *Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974), notwithstanding the pro- visions of New Jersey's Tort Claims Act, N.J. S.A. 59:1–1 *et seq. See DiPietro v. Garden State Racing Association*, 463 F.Supp. 574 (E.D.Pa.1978); *Ritchie v. Cahall*, 386 F.Supp. 1207 (D.N.J.1974).